UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard Orville HEIMFORTH,
Defendant-Appellant.

No. 73–2241.

United States Court of Appeals,
Ninth Circuit.

April 5, 1974.

Certiorari Denied April 1, 1974.
See 94 S.Ct. 1615.

Frank T. Vecchione (argued), Fed. Public Defenders, San Diego, Cal., Ralph N. George, Torrance, Cal., for defendant-appellant.

James W. Meyers (argued), Asst. U. S. Atty., Stephen G. Nelson, Catherine A. Chandler, Asst. U. S. Attys., Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before MERRILL, KOELSCH and CHOY, Circuit Judges.

CHOY, Circuit Judge:

Heimforth was convicted on four counts of illegally importing marijuana and possession of contraband with intent to distribute. The sole basis for his appeal is that certain quantities of marijuana, which the district court allowed at trial, were seized pursuant to an illegal search. We vacate and remand.

The facts are not in dispute. On March 14, 1972 border agents discovered 388 pounds of marijuana concealed in a truck. The driver told the agents that he had been hired to drive to a particular location in National City, California. Federal and state police then used this intelligence to set up a scheme to appre-

hend the driver's employers. The truck was driven to the National City location followed by the police agents. Shortly thereafter, a car pulled up, and a Wayne Tennison exited. Tennison then drove the truck to the King-A-Roo warehouse and parked it in the warehouse driveway. The agents approached and found Tennison still behind the wheel with Heimforth standing at the side working on the engine.

Heimforth and Tennison were immediately arrested and given the *Miranda*[1] warning. Heimforth was briefly questioned and again advised of his constitutional rights. During this interrogation, he stated that he was president of King-A-Roo Furnishings. When asked if he had "any objections" to the police entering the warehouse and "looking around," Heimforth replied no, "there should be nothing in there." Large amounts of marijuana were discovered hidden in various parts of the warehouse. It is the introduction of this contraband of which the appellant complains.

Appellant contends that the search was invalid, arguing his consent was not voluntary. When appellant consented to the search, he had already been arrested, and it is conceded that he was not advised of his right to withhold his consent to the search. In Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the Supreme Court, reversing an earlier decision of this court, 448 F.2d 699 (9th Cir. 1971), held that a search can be uncoerced though a suspect does not know he has the right to decline to permit the search; rather, "voluntariness is a question of fact to be determined from all the circumstances" of which the knowledge of the right to refuse consent is but one. Schneckloth v. Bustamonte, 412 U.S. at 248–249, 93 S.Ct. 2041. The defendant

there, however, had not been arrested prior to the search, and the Court specifically declined to decide if a suspect must be informed of his right not to consent in such circumstances. *See* Schneckloth v. Bustamonte, 412 U.S. at 240–241 n. 29 and 247 n. 36, 93 S.Ct. 2041.

We have recently decided the very point reserved in *Schneckloth.* In United States v. Rothman, 492 F.2d 1260 (9th Cir., Nov. 27, 1973), a panel of this court, observing that we have never differentiated between pre-arrest and post-arrest consent, held that "arrest is but one factor, albeit a critical one, in determining whether or not . . . consent was voluntary." 492 F.2d at 1264 n. 1.

This result is consistent with the rationale of *Schneckloth.* The Court there emphasized that the exclusionary rule, prohibiting the introduction of illegally procured evidence, is not designed to preserve a fair trial but to inhibit illicit police practices. In contrast, where knowing and intelligent waiver has been required[2]—and thus where knowledge of a right was necessary for waiver— there has been a danger that without the requirement, unjust convictions might result. An unknowledgeable waiver of counsel, for example, may well mean the imprisonment of an innocent person. When Fourth Amendment rights are waived without awareness of the right to refuse waiver, there is no danger of that yielding untruthful information. *See* Schneckloth v. Bustamonte, 412 U.S. at 235–246, 93 S.Ct. 2041. That is so even if the suspect has been arrested. And as long as the waiver must be voluntary, the prophylactic purpose of the exclusionary rule is served since searches, coerced in fact, thereby become useless means of attaining evidence. *Id.*

---

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. *See, e. g.,* United States v. Wade, 388 U.S. 218, 237, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (right to counsel at lineup); Miran-

da v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (right to counsel at interrogation); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (right to counsel at trial).

**972**

Thus we hold, in accord with *Rothman,* that the Supreme Court's "totality of circumstances" test applies to all consent searches regardless of whether the consenting party is in police custody when the consent is requested. In considering the factual issue of voluntariness, an important factor, however, remains whether there has been an arrest prior to the consent.

> [A] court must be aware of the "vulnerable subjective state" of the defendant as well as the possibility of "subtly coercive police questions," Schneckloth v. Bustamonte, *supra,* 412 U.S. at 229, 93 S.Ct. at 2049, and the inherently coercive nature of custodial interrogation.

United States v. Rothman, 492 F.2d at 1265. Other factors that should be taken into account, as relevant in this case, include the sophistication of the accused, *cf.* Schneckloth v. Bustamonte, 412 U.S. at 226–227, 93 S.Ct. 2041, and whether the *Miranda* warning was tendered. *See* United States v. Noa, 443 F.2d 144, 147 (9th Cir. 1971).

Although we find that the failure to give a "Fourth Amendment warning" does not by itself vitiate the search, we are nonetheless compelled to vacate the judgment and remand the case to the district court for the limited purpose of its making a specific finding on the legality of the search. That court simply found the search was legal without making specific findings directed to that issue. There were other plausible justifications for the search, and we cannot, with certainty, determine if the trial court relied on the voluntary consent of the appellant or some other ground to uphold the search. Moreover, since *Schneckloth,* the issue of voluntariness has become a delicate one. The only means of insuring that trial courts undertake the weighing process necessitated by its "totality of circumstances" test is to require explicit findings on the consent issue. While the Federal Rules of Criminal Procedure do not require, and we do not now hold, that findings be made on every suppression motion, trial courts ought to make factual findings when the issue before them is of such delicacy. *See* United States v. Sicilia, 457 F.2d 787, 788 (7th Cir. 1972), cert. denied, 414 U.S. 865, 94 S.Ct. 123, 38 L.Ed.2d 117 (1973).

Vacated and remanded.