**UNITED STATES of America, Appellee,**
v.

**Michael Warren COLETTA, John A. Wilms, Herve Bitton, Hernan Castro, Appellants.**

**Nos. 81–1607X to 81–1610X.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 14, 1982.

Decided July 29, 1982.

Rehearing Denied Sept. 2, 1982.

---

Stephen J. Heiser, San Francisco, Cal., for Coletta; Gregory S. Stout, San Francisco, Cal., on brief.

Gilbert Eisenberg, Filippelli & Eisenberg, San Francisco, Cal., for Wilms.

Jack K. Berman, San Francisco, Cal., for Bitton.

Paul Mike Goorjian, San Francisco, Cal., for Castro.

Before WALLACE and HUG, Circuit Judges, BROWN *, District Judge.

HUG, Circuit Judge:

Michael Coletta, John Wilms, Herve Bitton, and Hernan Castro appeal their convictions for violations of the Drug Abuse Prevention and Control Act, 21 U.S.C. §§ 801–966. Appellants sought dismissal of the indictment because of alleged irregularities in the selection of forepersons for grand juries empaneled in the Northern District of California. They now appeal the district court's ruling that they lack standing to allege discrimination in the selection of forepersons. Appellants also contend that the failure of the Drug Enforcement Administration to review the controlled substance status of cocaine gave rise to due process violations that required dismissal of the indictment. Two of the appellants claim the district court admitted evidence seized in violation of their fourth amendment rights. Finally, Castro seeks a remand for resentencing, arguing that his constitutional and statutory rights were violated at the sentencing hearing.

I

FACTS

The indictment charged the appellants with conspiracy to distribute cocaine. They waived their rights to jury trial, and submitted the case to the district judge on stipulated facts. The stipulations showed that Robert Prezioso, a Drug Enforcement Agency special agent, purchased one ounce of cocaine from Hernan Castro and his cousin, Carlos Castro,[1] in March, 1981. The Castros advised Prezioso they could provide larger quantities of cocaine. It was agreed that the Castros would arrange for the sale of eight kilograms of cocaine, for which Prezioso would pay $500,000.

On the day of the sale, Prezioso drove with Hernan Castro to a bank, where Castro was permitted to view and count the $500,000 in cash. Satisfied with Prezioso's ability to pay, Castro signaled his co-conspirators that Prezioso's partner should be allowed to examine the cocaine. The partner, Drug Enforcement Agency informant Raymond Angelone, went to the Castros' apartment, where he met John Wilms and Herve Bitton. Bitton took Angelone to Michael Coletta's apartment, where Coletta showed Angelone a brown travel bag filled with eight plastic bags of cocaine. Angelone tested the drugs and advised Coletta that he was satisfied with their quality and that the transaction could proceed. Coletta returned the cocaine to the travel bag and zipped the bag. Coletta and Angelone then drove in Coletta's car to the Castros' apartment, where they were to meet Prezioso and complete the transaction.

Angelone's uncontroverted testimony at the suppression hearing was that as he and Coletta waited, Angelone got into the back seat carrying a second travel bag. Pursuant to his instructions, he unzipped Coletta's bag, and prepared to transfer the cocaine to the empty bag. Coletta insisted Angelone leave the cocaine in his travel bag, and Angelone, leaving both bags unzipped, returned to the front seat.

Wilms approached Prezioso's car, confirmed the presence of the cash, and indicated to Coletta that the exchange could take place. Prezioso then gave surveilling agents an arrest signal, and all four appellants were arrested at the scene.

Based on these stipulated facts, each of the appellants was convicted of conspiracy to distribute cocaine. 21 U.S.C. §§ 841(a)(1) and 846. A lawful search of Coletta's apartment after his arrest yielded an additional sixteen ounces of cocaine, which resulted in his conviction for possession of cocaine with intent to distribute. 21 U.S.C. § 841(a)(1).

II

SELECTION OF GRAND JURY FOREPERSONS

Appellants filed a pretrial motion for dismissal of the indictment on the basis of

---

* The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

1. Carlos Castro was indicted with the appellants. He is not a party to this appeal.

alleged irregularities in the jury selection process in the Northern District of California. They contended that the procedure employed to appoint grand jury forepersons did not require random selection, but allowed discretion in the choice of a foreperson. Abuse of that discretion was claimed to result in the appointment of a disproportionate number of Caucasian males. Appellants viewed this alleged discrimination as a violation of their constitutional rights.[2]

The district court held that the appellants, as Caucasian males, lacked standing to allege discrimination against women and minorities. Further discovery on the issue was precluded, and appellants' request for an evidentiary hearing was denied.[3] Appellants challenge this preclusion, and seek a remand for an evidentiary hearing on the issue.

Appellants' challenge to the procedures employed to select grand jury forepersons is based upon *Rose v. Mitchell,* 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), in which the Supreme Court held that black defendants who alleged systematic exclusion of blacks from appointment as forepersons of state grand juries stated a claim under the equal protection clause. Appellants understand *Rose* as authorizing broad challenges to the foreperson selection process by all criminal defendants. In asserting their standing to raise this claim, appellants rely on *Peters v. Kiff,* 407 U.S. 493, 504, 92 S.Ct. 2163, 2169, 33 L.Ed.2d 83 (1972). In that case Peters, a white male, alleged that the grand jury that indicted him and the petit jury that convicted him were empaneled under procedures that excluded blacks. The Court held Peters had standing to state these claims: "whatever his race, a criminal defendant has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race . . . ."

Appellants' theory, that *Peters* grants them standing to seek dismissal of their indictment under *Rose,* fails to distinguish the constitutional bases of these two cases. The *Peters* defendant alleged a due process violation. In concluding that Peters, a white male, had standing to challenge exclusion of blacks from grand and petit juries, the Court reasoned that the exclusion of a discernible class from jury service injured not only the specific defendant, but the integrity of the jury system. Due process was violated if the jury failed to reflect "a representative cross section of the community." 407 U.S. at 500, 92 S.Ct. at 2167. The irregularities in jury selection thus threatened injury to Peters's personal rights under the due process clause.

■ In contrast, the defendants in *Rose* alleged that discrimination against their race in selection of foreperson violated their rights under the equal protection clause. Their claims implicated not only general societal interest in the integrity of the judicial system, but also a "personal constitutional right" not to be subject to irrational and discriminatory classifications. *Rose,* 443 U.S. at 561–62, 99 S.Ct. at 3003, contrasting *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In order

---

2. Appellants' motion for dismissal of the indictment included challenges to the composition of both grand and petit juries in the Northern District of California. The district court allowed additional discovery on the jury composition claims. After considering appellants' evidence, it refused to dismiss the indictment. That ruling has not been appealed, and no issue concerning grand or petit jury composition is before us.

3. The Government suggested at oral argument that this ruling did not in fact preclude production of evidence on the issue. Relying on the trial judge's statement that "[y]ou may have some standing on other alleged constitutional grounds . . . .", the Government views the ruling as conditional. It contends appellants were free to submit additional evidence to persuade the judge they did have standing to press these claims, and that their failure to do so bars consideration of the issue now.

Our examination of the transcript reveals no such waiver. Clearly appellants thought consideration of the foreperson issue was terminated with the ruling on standing. We view the judge's statement as an indication that constitutional grounds other than equal protection might support appellants' foreperson claim, and as an invitation to pursue one of those alternate theories.

to enforce that right, each defendant was required to "show that the procedure employed resulted in substantial underrepresentation of *his* race or of the identifiable group to which *he belongs.*" *Id.* at 565, 99 S.Ct. at 3005, *quoting Castaneda v. Partida,* 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977) (emphasis added). *Rose,* applying a traditional equal protection analysis, thus holds that in order to assert an equal protection claim plaintiffs must be members of the excluded group. *See Alexander v. Louisiana,* 405 U.S. 625, 633, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972) (Black male's allegation of exclusion of blacks from grand jury states equal protection claim; allegation of exclusion of women distinguished); *Hernandez v. Texas,* 347 U.S. 475, 477, 74 S.Ct. 667, 669, 98 L.Ed. 866 (1954) ("denial of equal protection ... to try a defendant of a particular race or color under an indictment issued by a grand jury ... from which all persons of his race or color have ... been excluded."). *But see United States v. Perez-Hernandez,* 672 F.2d 1380, 1386 (11th Cir. 1982) (membership in excluded group not required to bring equal protection claim).

Appellants have not shown that any group of which they are members has been excluded from the foreperson selection process. They have experienced no injury to their personal rights to equal protection, and they lack standing to assert the equal protection rights of the women and minorities who may have been excluded. *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1974); *Halet v. Wend Investment Co.,* 672 F.2d 1305, 1308 (9th Cir. 1982).

■ Under *Peters,* these appellants do have standing to challenge the selection procedures as due process violations. We conclude, however, that appellants' allegations are insufficient to state a claim under the due process clause. Perhaps under some circumstances systematic discrimination in the appointment of grand jury forepersons would so imperil the integrity of the jury system that the resulting indictments and convictions would be fundamentally unfair. However, these appellants have failed to suggest how the selection of one person, serving on a correctly constituted panel, could have a significant impact on the basic fairness of the process.

Appellants have no standing to challenge the selection of forepersons as an equal protection violation. Their allegations are insufficient to imply a due process violation. The district court was correct in denying their motion to dismiss.

### III

### CLASSIFICATION OF COCAINE

■ The Drug Abuse Prevention and Control Act, 21 U.S.C. § 811, authorizes the Attorney General to review the classification of substances listed in section 812 of the Act. Where consideration of scientific and medical evidence and evaluation of drug abuse factors suggest to the Attorney General that a drug is misclassified, he may promulgate regulations to remove a drug from the classification schedules or to move it from one schedule to another. Section 841 of the Act specifies the penalties prescribed for drug offenses in terms of the drug's classification under section 812. It is appellants' theory that the interplay of these provisions renders the indictment under which they were charged constitutionally infirm. The district court correctly refused to dismiss the indictment on this basis.

By moving a controlled substance from one schedule to another, the Attorney General necessarily alters the penalties that result from unlawful possession or distribution of that substance. Appellants view this as an unconstitutional delegation of legislative authority, in that administrative officials may determine the consequences of statutory violations. This court recently considered and rejected that argument. *United States v. Alexander,* 673 F.2d 287, 289 (9th Cir. 1982).

Next appellants contend that the Attorney General's failure to reclassify cocaine or remove it from the section 812 schedules constitutes an abuse of discretion and ren-

ders the penalty for cocaine offenses unconstitutionally vague. Even if we were to assume that, as appellants argue, scientific evidence supports the reclassification of cocaine, that evidence would not mandate reclassification. Removing a substance from its section 812 schedule requires consideration of, *inter alia*, the drug's effect on the public health and its potential for abuse. Section 811(c). In view of these factors, the failure to reclassify cocaine is neither irrational nor an abuse of discretion. *Alexander*, 673 F.2d at 288.

Because of our conclusions here and in *Alexander*, the district court's refusal to consider the scientific evidence proffered by appellants or to hold an evidentiary hearing was not error.

## IV

### SEARCH OF TRAVEL BAG

Coletta was arrested as he sat in his car waiting for the exchange of the cocaine for the money. As the Drug Enforcement Agency officers approached the car, Coletta started the engine. Agent Prezioso instructed Coletta to stop the car, arrested him, and removed him from the vehicle. Prezioso then reached into the back seat and seized two travel bags. One bag, placed in the car by Angelone, was empty. The other, Coletta's travel bag, contained the eight kilograms of cocaine.

Coletta contended Prezioso's warrantless entry into the vehicle and removal of Coletta's bag constituted an unlawful search and seizure. He sought suppression of the cocaine. After an evidentiary hearing, the district judge denied the motion. Although no findings were made, the denial appears to have been based on the application of the plain view doctrine.

■ Agents Prezioso and Plattos, as well as the informant, Angelone, testified at the hearing that Coletta's bag was partially unzipped and its contents visible. Coletta testified that before leaving his apartment, he covered the cocaine with a towel and zipped the bag shut. He also stated that as he waited for the exchange, he transferred the bag from the back seat to the car's rear floor, so that the cocaine would not have been in plain view. It would appear that implicit in the district judge's denial of the suppression motion was a finding that he believed the testimony of the agents and Angelone and discredited that of Coletta. This credibility determination will not be disturbed on appeal. *See United States v. Harrington*, 636 F.2d 1182, 1185 (9th Cir. 1980) (denial of suppression motion to be upheld if reasonable view of evidence supports it).

■ In addition, the Supreme Court recently held that the warrantless search of a vehicle and search and seizure of its contents are lawful where officers have legitimately stopped the vehicle and they have probable cause to believe it contains contraband. *United States v. Ross*, —— U.S. ——, ——, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982). Because the agents had probable cause to arrest Coletta, their stop of his vehicle was legitimate. Agent Prezioso had been informed by Castro that they would be met at the Castros' apartment by the suppliers, who would have the cocaine. He observed Coletta and Angelone in Coletta's car. After Wilms confirmed to Coletta the presence of the money, Prezioso turned the money over to Castro and was instructed by Castro to walk to Coletta's car to complete the exchange. Without question, these facts provided probable cause to believe the cocaine was in the car and therefore justified the warrantless search of the car. In addition, the remaining requirements imposed by *Ross* are satisfied. The officers anticipated that the drugs would be in Angelone's bag, rather than Coletta's; therefore, probable cause to search was not limited to a specific container. *Id.* at —— & n.22, 102 S.Ct. at 2168 & n.22. The bag was of such a size and shape that it was likely to contain the drugs. *Id.* at ——, 102 S.Ct. at 2169. The search and seizure of the bags were lawful, and the district

court correctly denied the motion to suppress.[4]

## V

## SEARCH OF BITTON'S APARTMENT

■ Following appellants' arrests, a warrant was issued for the search of Bitton's apartment. Bitton claimed that the agents requesting the warrant had failed to establish a nexus between Bitton's home and the crime with which he was charged. Because of this failure, he reasoned there was not probable cause to believe that the drugs and drug paraphernalia listed in the warrant could be found in Bitton's apartment. He contended this lack of probable cause required invalidation of the warrant and suppression of all evidence seized in the apartment. The district court denied the suppression motion.

This court does not review motions to suppress as abstract legal theories divorced from the facts of the case. When Bitton's legal argument is tied to the pertinent facts, its lack of merit is patent. Before this court, Bitton identified only one specific item of evidence seized from his apartment: a packing carton for a pistol. This item is totally without evidentiary significance.[5] Bitton stipulated that he was carrying a pistol on the day of the transaction, and there was more than ample evidence of Bitton's participation in the conspiracy. The district court's failure to suppress this evidence, if erroneous, was harmless beyond any doubt. *See United States v. Hackett*, 638 F.2d 1179, 1186 (9th Cir. 1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *United States v. Gulma*, 563 F.2d 386, 390 n.3 (9th Cir. 1977). We therefore need not consider Bitton's challenge to the warrant.

## VI

## REFUSAL TO CONTINUE SENTENCING

Following the verdicts, Castro discharged his trial attorney, who had failed to secure Castro's release on bail pending sentencing. The new attorney, appointed September 8, moved on September 18 for a two-week continuance of the sentencing, then set for September 23. The attorney did not interview Castro prior to September 23. He stated at the sentencing hearing that he was unfamiliar with Castro's background and the facts of the case, and that he had not seen the presentence report.

The district court denied the motion for a continuance and proceeded with sentencing, after assuring Castro's attorney that the court would be receptive to a motion for modification of judgment, if the attorney's review of the case uncovered grounds for such a motion. The judge instructed the probation department to make the presentence report available. The attorney agreed that this procedure was "satisfactory."

Castro now claims denial of a continuance violated due process, his right to counsel, and the requirements of Fed.R.Crim.P. 32(c)(3)(A). He seeks a remand for resentencing.

■ Castro alleges Fed.R.Crim.P. 32(c)(3)(A) was violated because his attorney did not see the presentence report prior to sentencing. That rule provides in part:

Before imposing sentence the court shall upon request permit the defendant, or his counsel if he is so represented, to read the

---

4. At oral argument before this panel, Coletta suggested that *Ross* requires that the search be incident to arrest, relying on *United States v. Cleary*, 656 F.2d 1302 (9th Cir. 1981), *vacated*, -- U.S. -- , 102 S.Ct. 2919, 73 L.Ed.2d 1324 (1982) (remanded for consideration in light of *Ross*). At the time of arrest, agents looked into the bag and reasonably concluded it contained cocaine. In our view, that examination comprised the challenged search, rather than the thorough examination and analysis of the drug made later at Drug Enforcement Agency headquarters. We therefore need not consider whether *Ross* authorizes only searches made incident to an arrest.

5. Bitton was indicted for violation of 18 U.S.C. § 924(c)(1), in addition to the conspiracy charge. The count alleging use of a firearm was dismissed. Even if Bitton had been prosecuted on that charge, the evidentiary value of the packing carton is difficult to perceive.

report of the presentence investigation exclusive of any recommendation as to sentence, . . . ; and the court shall afford the defendant or his counsel an opportunity to comment thereon and, at the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in the presentence report.

The court is required to disclose the report only if the defendant requests disclosure. *United States v. Winn*, 577 F.2d 86, 92 (9th Cir. 1978). Castro's attorney made no such request prior to the sentencing hearing. His inability to review the report thus resulted from his own failure to act, not from the judge's refusal to grant a continuance. Fed.R.Crim.P. 32 was not violated.

Castro claims that the result of the denial of a continuance was to render his attorney unable to effectively comment on the report, thus depriving Castro of his rights to counsel and due process. The due process clause does not require disclosure of the presentence report. *Williams v. New York*, 337 U.S. 241, 249–51, 69 S.Ct. 1079, 1084–85, 93 L.Ed. 1337 (1949). Due process does require that the sentencing judge listen to and fairly consider information material to mitigation of punishment. *United States v. Doe*, 655 F.2d 920, 927 (9th Cir. 1981); *see also United States v. Wolfson*, 634 F.2d 1217, 1221–22 (9th Cir. 1980). Castro has not demonstrated that the procedure adopted by the district court failed to satisfy this requirement. Both Castro and his attorney were given an opportunity to address the court prior to sentencing. Castro does not question the judge's assurance that he would consider mitigating evidence submitted after sentencing. Nor does he suggest that the report contained unfair or unsupported allegations. *See United States v. Weston*, 448 F.2d 626, 634 (9th Cir. 1971), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972) (information in presentence report must be sufficient to be persuasive of validity of charges made in report). We therefore conclude that the judge's refusal to grant a continuance, especially in view of the procedure he adopted,

did not threaten any of Castro's constitutionally protected interests.

Each of the convictions is AFFIRMED.