**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Francisco Manuel**
**CERVANTES–GAITAN,**
**Defendant-Appellant.**

No. 85–5124.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 1985.

Decided May 9, 1986.

Patrick K. O'Toole, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Frank V. Gregorcich, San Diego, Cal., for defendant-appellant.

Before WALLACE, ANDERSON, and NORRIS, Circuit Judges.

WALLACE, Circuit Judge:

Cervantes-Gaitan appeals from his conviction for importing heroin in violation of 21 U.S.C. §§ 952, 960, 963, and for possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

Testimony at a pretrial hearing supports the following factual account. Cervantes-Gaitan and four other male aliens illegally entered the United States at Stuart's Bridge, one mile west of the San Ysidro, California Port of Entry. A border patrol agent was notified of the illegal entry and, with the help of a service helicopter, located Cervantes-Gaitan and the four other aliens in some high brush. The border patrol agent identified himself as an officer and arrested all five aliens after they admitted having illegally entered the United States. At the time of his arrest, Cervantes-Gaitan was carrying a duffel bag that was zippered closed.

The border patrol agent called for transport assistance and walked the aliens to a road 150 yards away from where he first found them. He took the duffel bag from Cervantes-Gaitan, placed it on the ground, and searched Cervantes-Gaitan and the four other aliens. After completing the search, the agent opened the duffel bag and found a sock with a hard object inside that he thought might be a knife. He asked what was inside the sock and Cervantes-Gaitan indicated that it was heroin. At this point, the border patrol agent put handcuffs on Cervantes-Gaitan. He then looked inside the sock and found an object wrapped in black electrical tape. Later, while in the transport vehicle, the agent unwrapped the object and found a plastic bag filled with brown powder.

Cervantes-Gaitan was taken to a border patrol station where the border patrol agent and other immigration officials conducted an inventory search of the duffel bag. At some point during the inventory search of the bag, the agent asked Cervantes-Gaitan if he had some more heroin. Cervantes-Gaitan said that he did. The inventory search continued and additional heroin was discovered in the duffel bag.

Drug Enforcement Administration (DEA) agents then advised Cervantes-Gaitan of his constitutional rights, which he waived. Cervantes-Gaitan admitted that he was paid $3,000 for smuggling the heroin across the border and signed a written confession. The written confession stated that his statements were made voluntarily, with no threats or promises having been made. The four aliens who were arrested with Cervantes-Gaitan were sent back to Mexico on the same day of their arrest.

Cervantes-Gaitan's version of the facts is slightly different. He testified that the complete search of the duffel bag and the agent's question relating to whether he had any more heroin occurred in the field shortly after the initial search of the bag. He also testified that he asked for an attorney, but that the DEA agents told him that he should just finish writing his confession and that he would be taken to a place like a hotel and then be deported to Mexico.

After Cervantes-Gaitan was charged in a two-count indictment, he filed motions to suppress evidence seized from his duffel

bag, to suppress statements made at the border patrol station, and to dismiss the indictment, all of which were denied. The district judge tried the case based on stipulated facts and the transcript of the pretrial hearing, and found Cervantes-Gaitan guilty of both counts.

## II

Cervantes-Gaitan contends that the district court erred in denying his motion to suppress. "Because no findings of fact were made and because none were requested, we must uphold the trial court's denial of the motion to suppress if there is a reasonable view of the evidence that will sustain it." *United States v. Williams,* 630 F.2d 1322, 1327 (9th Cir.), *cert. denied,* 449 U.S. 865, 101 S.Ct. 197, 66 L.Ed.2d 83 (1980); *see United States v. Coletta,* 682 F.2d 820, 825 (9th Cir.1982), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433 (1983).[1] We must view the evidence in the light most favorable to the government. *United States v. Harrington,* 636 F.2d 1182, 1185 (9th Cir.1980).

■ Cervantes-Gaitan contends that certain evidence obtained from his duffel bag should have been suppressed. Under a reasonable view of the evidence, the initial search of the bag in which the agent discovered a plastic bag of heroin wrapped in electrical tape was valid as a search incident to arrest. *United States v. Burnette,* 698 F.2d 1038, 1049 (9th Cir.), *cert. denied,* 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.3d 312 (1983). There is a conflict between the testimony of Cervantes-Gaitan and the government agents as to when and where a more complete search of the duffel bag occurred. The district court did not make a factual finding on this issue, and Cervantes-Gaitan did not request that one be made. The district court could reasonably have found that the more complete search occurred at the border patrol station. Under this view, there is sufficient evidence to sustain a conclusion that the search was a valid inventory search. *See Illinois v. Lafayette,* 462 U.S. 640, 643–48, 103 S.Ct. 2605, 2608–11, 77 L.Ed.2d 65 (1983). The agent testified that the search of the duffel bag at the station was a "standard inventory procedure." The same agent testified on cross-examination that he did not make an inventory list of all the articles found in the bag because standard procedure normally calls for only an inventory list of money. Cervantes-Gaitan contends that the agent's testimony indicates that the search at the station was not a valid inventory search. The district court, however, could reasonably have concluded that the agent's later testimony referred only to what items the officers regularly included

---

1. The dissent reads *United States v. Miner,* 484 F.2d 1075 (9th Cir.1973) *(Miner),* and *United States v. Heimforth,* 493 F.2d 970 (9th Cir.) *(Heimforth), cert. denied,* 416 U.S. 908, 94 S.Ct. 1615, 40 L.Ed.2d 113 (1974), as supporting a remand to the district court for specific findings of fact. Neither case, however, undermines our reliance on *United States v. Williams,* 630 F.2d at 1327. In *Miner,* we concluded that the "any reasonable view of the evidence" standard should not be applied because it was doubtful that the district judge had considered the proper legal issue. *Miner,* 484 F.2d at 1077. That is not the case here. Similarly, in *Heimforth,* we expressly declined to hold that findings must be made on every suppression motion; instead, we stated merely that district judges "ought to" make such findings when the involved issues are "delicate." *Heimforth,* 493 F.2d at 972. To the extent that *Heimforth* gives us the discretion to remand, notwithstanding the "must uphold" language of *Williams,* we find it unnecessary to do so under these facts. Regardless of whether the full search occurred in the field or at the border patrol station, we would still hold that the evidence should not be suppressed. If the district court had found that a second and more complete search of the duffel bag occurred in the field immediately after the initial search, a reasonable view of the evidence indicates that the second search would have been proper as a search incident to arrest and the search at the station would have been proper under *Burnette's* reduced expectation of privacy analysis. 698 F.2d at 1049–50. Furthermore, in *United States v. Coletta,* 682 F.2d at 825, which also involved application of the fourth amendment to the search of a bag, we applied the "any reasonable evidence" standard to affirm the denial of a suppression motion because it was "implicit in the district judge's denial ... that he believed the testimony of the agents and discredited that of Coletta." We see no reason to apply a different standard in this case. Cervantes-Gaitan cannot be saved from his failure to request findings of fact.

in the inventory list and did not indicate that a standard inventory search had not occurred. Thus, a reasonable view of the evidence exists to support the district court's denial of the motion to suppress.

### III

■ Cervantes-Gaitan next contends that the court erred in refusing to suppress voluntary statements that were made after a valid *Miranda* warning was given. He argues that the statements were tainted by two earlier failures to give *Miranda* warnings prior to receiving incriminating statements. In *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (*Elstad*), the Supreme Court concluded that

> absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement.

*Id.* 105 S.Ct. at 1296. Thus, *Elstad* required the district court to determine if Cervantes-Gaitan's initial statements were actually coerced in violation of the fifth amendment. *See United States v. Wauneka,* 770 F.2d 1434, 1440 (9th Cir.1985). We think that there exists a reasonable view of the evidence that sustains the district court's implicit determination that his initial statements were not coerced. Cervantes-Gaitan conceded at oral argument that the statements made after the *Miranda* warning was given were voluntary. Consequently, this case falls squarely within *Elstad,* and the district court properly denied the motion to suppress.

### IV

■ As a final matter, Cervantes-Gaitan contends that the district court erred in not dismissing the indictment because the government violated his fifth and sixth amendment rights by deporting and making unavailable for interview the four individuals who were with him at the time of his arrest. In *United States v. Valenzuela-Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), the Supreme Court concluded that the mere fact that potential witnesses were deported is not sufficient to establish a violation of the fifth and sixth amendments. Rather, a criminal defendant must make "a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." *Id.* at 873, 102 S.Ct. at 3449; *see also United States v. Marquez-Amaya,* 686 F.2d 747, 748 (9th Cir.1982).

■ Cervantes-Gaitan made no such showing of materiality in the district court. Consequently, the district court did not err in denying the motion to dismiss. *See United States v. Fierros,* 692 F.2d 1291, 1296 (9th Cir.1982), *cert. denied,* 462 U.S. 1120, 103 S.Ct. 3090, 77 L.Ed.2d 1350 (1983).

AFFIRMED.

NORRIS, Circuit Judge, dissenting:

I dissent. The district court denied defendant's suppression motion without findings of fact or conclusions of law. The court simply concluded in a one-sentence oral order that "based on the status of the law at this time", the challenged evidence was admissible. Unlike the majority, I am unwilling to dispose of defendant's constitutional claims without particularized findings of fact or any assurance that the district court weighed the evidence in accordance with the proper Fourth Amendment standards. Therefore, I would remand for findings of fact and conclusions of law adequate to support reliable appellate review.

Defendant Cervantes-Gaitan moved to suppress heroin that the Border Patrol discovered in a zippered duffel bag he was carrying at the time of his arrest. Testimony at the pretrial suppression hearing indicated that defendant's bag was subjected to progressively more intrusive searches

during the one-hour interval from his arrest to his jailing. Each of these searches revealed packets of heroin carefully squirreled within defendant's personal effects. Each was also admittedly conducted without a warrant. Thus, the validity of each search depends on whether it can be squared with one of the limited exceptions to the Fourth Amendment's warrant requirement.

The government offers three different grounds for upholding the searches, all of which are highly fact-specific. First, the government maintains that the Border Patrol agent who arrested Cervantes-Gaitan immediately searched his bag in the field as a valid self-protective measure incident to arrest. Second, relying on *United States v. Burnette*, 698 F.2d 1038 (9th Cir.), *cert. denied*, 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983), the government maintains that the agent's subsequent thorough search at the roadside did not invade defendant's continuing expectations of privacy in the contents of the bag because his privacy interests in the bag evaporated with the initial legitimate search. Finally, the government maintains that the exhaustive search at the stationhouse that revealed the full extent of defendant's heroin stash was justified as a routine inventory, conducted for housekeeping purposes in compliance with established inventory procedure.

On the present record, it is impossible to evaluate the government's arguments for upholding the successive searches of defendant's bag. The district court neither resolved the conflicting testimony of the arresting officer and the defendant nor indicated the legal bases it regarded as legitimizing the cumulative search of defendant's possessions. Faced with this indeterminate record, the majority conjectures versions of each search that conveniently save it from constitutional attack. The majority's conjectures notwithstanding, the evidence supports with equal, if not greater, plausibility the distinct possibility that the Border Patrol repeatedly violated defendant's Fourth Amendment rights.

For instance, the first search could not qualify as a protective search incident to defendant's arrest if, as the Border Patrol agent testified, he had already arrested defendant, thrown the bag some ten yards from his feet, and gained exclusive control over the bag before he searched it. Likewise, if the first search was superficial, the later thorough search at the roadside would have invaded defendant's residual privacy interests and thus exceeded the limits of the *Burnette* doctrine. *See Burnette*, 698 F.2d at 1053–54 (Norris, J., dissenting); *see also United States v. Monclavo-Cruz*, 662 F.2d 1285 (9th Cir.1981) (fact that purse could have been fully searched concomitantly with valid arrest does not justify delayed warrantless search). Finally, the Border Patrol agent testified that no inventory was drawn up of the items in defendant's bag, thus casting grave doubt on the applicability of the inventory search exception to the final search at the Border Patrol station. *See Illinois v. Lafayette*, 462 U.S. 640, 648, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983) (conditioning validity of inventory search on compliance with established police procedure).

In my view, the majority errs when it gives the qualified rule of *United States v. Williams*, 630 F.2d 1322, 1327 (9th Cir. 1980), an unqualified scope. Read against our precedents, particularly *United States v. Miner*, 484 F.2d 1075 (9th Cir.1973), and *United States v. Heimforth*, 493 F.2d 970 (9th Cir.1974), cert. denied, 416 U.S. 908, 94 S.Ct. 1615, 40 L.Ed.2d 113 (1974), *Williams* does not compel us to affirm the district court's denial, without findings, of a motion to suppress whenever "there is a reasonable view of the evidence that will sustain" the denial. *Williams*, 630 F.2d at 1327. Instead, our precedents demonstrate that we have discretion to remand to the district court for specific findings whenever our resolution of suppression claims unassisted by such findings would constitute unwarranted conjecture.

In *Williams* we affirmed the denial of the defendants' suppression motion despite the absence of findings of fact because the

district court unquestionably focussed on the critical Fourth Amendment issue—exigent circumstances—and applied the proper test. *Williams*, 630 F.2d at 1327. In *Miner*, to the contrary, we vacated the conviction and remanded for further proceedings with respect to the suppression motion because the record put in question whether the district court identified the critical issue—the voluntariness of the defendant's consent—and how it resolved conflicting testimony that bore on consent. *Miner*, 484 F.2d at 1077. Although our court recognized in *Miner* that "[o]rdinarily, when a motion to suppress has been denied, we view the evidence in the light most favorable to the Government," we went on to conclude, based on the indeterminancy of the record, that "we should not apply these principles here." *Id.*

*United States v. Heimforth*, 493 F.2d 970 (9th Cir.1974), also calls into question the majority's unqualified reliance on the *Williams* standard. In *Heimforth* the district court upheld a warrantless search without entering findings of fact or otherwise indicating which exception to the warrant requirement formed the basis of its ruling. *Heimforth*, like the case now before us, involved several fact-specific Fourth Amendment questions, as well as divergent rationales for upholding the search. Although we acknowledged that "the Federal Rules of Criminal Procedure do not require ... that findings be made on every suppression motion," we suggested that "trial courts ought to make factual findings when the issue before them is [delicate]." *Heimforth*, 493 F.2d at 972; *see also United States v. Sicilia*, 457 F.2d 787, 788 (7th Cir.1972), *cert. denied*, 414 U.S. 865, 94 S.Ct. 123, 38 L.Ed.2d 117 (1973) (when "the factual and legal context is somewhat complicated," district court should record findings of fact and conclusions of law); 3 C. Wright, Federal Practice and Procedure: Criminal 2d § 675, p. 787 (although not required, "it is the better practice" to make findings on a hearing to suppress evidence). We thus vacated the conviction and remanded for "a specific finding on the legality of the search." *Heimforth*, 493 F.2d at 972.

"When the factual and legal context is somewhat complicated," *see Sicilia*, 457 F.2d at 788, I believe that the district court has an independent institutional obligation to specify the factual and legal basis for its ruling. Otherwise, we end up adjudicating claims on the basis of alternative, largely unfounded factual hypotheses, without much-needed guidance from the trier of fact. Defendant's Fourth Amendment claims rest on complex standards, some of which this court has only recently formulated, *see, e.g. United States v. Burnette, supra,* and on disputed facts that remain in critical respects unresolved. The record in its present state gives us no basis for confidence that the district court either focussed on the critical facts or applied to those facts the correct constitutional standards. Therefore, I would remand to the district court for findings of fact and conclusions of law supporting its denial of defendant's suppression motion.