UNITED STATES of America

v.

Raul LOAIZA–MARIN.

Crim. A. No. 87–8.

United States District Court,
E.D. Louisiana.

June 3, 1987.

Lawrence Benson, Asst. U.S. Atty., U.S. Atty's Office, New Orleans, La., for the U.S.

Virginia L. Schlueter, Deputy Public Defender, Federal Public Defender's Office, New Orleans, La., for defendant.

## MEMORANDUM OPINION

MENTZ, District Judge.

On February 17, 1987, the Court held an evidentiary hearing on defendant's motion to suppress. After hearing the testimony and the arguments of counsel, the Court denied defendant's motion. The Court *sua sponte* vacated its ruling in order to allow the parties to submit post-hearing memoranda discussing whether the evidence in question was seized during a lawful inventory search. Time was permitted for the parties to obtain a transcript of the hearing and the matter was taken under submission upon receipt of the post-trial memoranda. The Court now renders its ruling.

The defendant was arrested by Agent Kevin McDonald of the United States Border Patrol during a routine transportation check at the Greyhound Bus Station in

New Orleans, Louisiana. Defendant admitted he entered this country illegally when he was unable to produce the immigration papers requested by the agent. He was taken to the Border Patrol Station where his luggage, a medium-sized canvas bag secured with a zipper, was examined by Agent Eric Weldon. When Agent Weldon removed a pillow the defendant was carrying in his luggage, he felt something with hard lumps inside the pillow. Agent Weldon saw that one corner of the pillow was loosely sewn with different colored thread. He pulled the thread to separate the seams of the pillow and reached inside to pull out several small, clear packages containing a white substance, which field-tested positive for the presence of cocaine. The defendant was charged with possession with intent to distribute a Schedule II narcotic drug controlled substance in violation of Title 21, United States Code, Section 841(a)(1).

■ There is some question as to whether the search in question should be treated as a search incident to an arrest or an inventory search. The question arises from Agent Weldon's testimony that the search he conducted was a "pre-inventory search" conducted prior to the inventory search to be conducted when the defendant was turned over to the Drug Enforcement Administration (DEA). A search incident to arrest is an exception to the warrant requirement justified by the need to disarm an arrested person and remove destructible evidence from his reach. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). An inventory search is also an exception to the warrant requirement, occurring after arrest and before incarceration. *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65 (1983). The justification for the inventory search exception rests with the necessity and reasonableness of examining the personal effects of a person under lawful arest. The inventory search serves important governmental interests such as the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger. *La-*

*fayette*, 103 S.Ct. at 2608–2610 (1983); *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976).

Defendant argues that as a search incident to an arrest, the expectation of privacy in the contents of the luggage precluded the border patrol agents from even opening the defendant's luggage without an arrest warrant, citing *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 2485, n. 8, 53 L.Ed.2d 538 (1977) and *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 2592, 61 L.Ed.2d 235 (1979). Unlike the searches involved in *Chadwick* and *Sanders*, the search in the case at bar was not conducted to investigate criminal conduct.

■ In opening defendant's pillow, Agent Weldon was not acting for security purposes, since he testified that he did not expect to find weapons or explosives. Nor was he acting to uncover evidence of a crime. Agent Weldon testified that he did not know that he would find cocaine inside the pillow. He smelled nothing and saw nothing oozing from the pillow. However, when he felt the hard lumps and saw that a seam had been loosely sewn with different colored thread, he suspected that valuables were hidden inside. He testified that aliens often hide money in their hem or pillow and that it is routine administrative procedure to inventory any valuables. Agent Weldon opened the pillow to determine whether valuables were hidden inside, not as "a pretext concealing an investigatory police motive." *Opperman*, 96 S.Ct. at 3100. Searching for valuables fulfills the inventory policy of protecting against theft or claims of theft. The foregoing facts establish that this search was an administrative, non-investigatory search. Accordingly, the Court finds that the search of the contents of the defendant's luggage should be treated as an inventory search.

The defendant argues in the alternative that if the search in question was an inventory search, then the agents could only inspect and list the plainly visible contents of the luggage pursuant to routine administrative procedures; the defendant con-

tends, however, that the search herein was not a valid inventory search because the pillow was an opaque, sealed container and no inventory was prepared.

█ The argument that inventory searches should be limited to objects in "plain view" is not supported by the law. In *Colorado v. Bertine,* —— U.S. ——, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), a police officer inventoried the contents of an impounded van. The officer found a closed, nylon backpack containing metal canisters. The officer opened the canisters which contained cocaine, methaqualone tablets, cocaine paraphernalia, and $700 in cash. In an outside zippered pouch the officer found a sealed envelope which contained $210 in cash. Even though the drugs were not in plain view, the Court held that the search was reasonable and did not violate Bertine's rights under the Fourth Amendment.

The defendant attempts to distinguish *Bertine* on the basis that the items searched were found in an automobile where there is a "diminished expectation of privacy." In *Bertine,* the Court did not rely on the diminished expectation of privacy in an automobile as support for its decision upholding the search. Instead, the Court found that the inventory search of the van was reasonable based on the strong governmental interest in securing the defendant's property. 107 S.Ct. at 742.

Courts have upheld searches similar in scope to the search in question where the evidence of contraband was not in plain view nor subject to a "diminished expectation of privacy." In *United States v. Rabenberg,* 766 F.2d 355 (8th Cir.1985), the police conducted an inventory search of items which were neither in plain view nor found in a car. The objects searched in *Rabenberg*—an opaque, plastic covering which was inside a partially opened gift-wrapped package in an open suitcase—are analogous to the objects searched in the case at bar—an opaque, loosely sewn pillow which was inside a zippered, but not locked, suitcase. Like Agent Weldon in the case at bar, the police officer in *Rabenberg* did not suspect narcotics might be present until he opened the opaque wrapping. The

court in *Rabenberg* held that the police acted reasonably in conducting the inventory search to attempt to identify the owner of the suitcase and uncover any dangerous weapons. *Id.* at 357.

In another case similar to the case at bar, *United States v. Cervantes-Gaitan,* 792 F.2d 770 (9th Cir.1986), a border patrol agent conducted an inventory search of an illegal alien's possessions which were neither in plain view nor found in a car. The border patrol agent conducted an inventory search of the contents of the alien's duffel bag. Inside the bag, the agent found a sock with a hard object inside. He looked in the sock and found an object wrapped in black electrical tape. The agent unwrapped the tape and found a plastic bag filled with brown heroin. The court found that the search was a valid inventory search. *See also United States v. Trullo,* 790 F.2d 205 (1st Cir.1986) (where the court did not suppress evidence of cocaine concealed in a can of Penzoil discovered during an inventory search of a car).

█ An issue related to defendant's plain view argument is whether the evidence of the cocaine must be suppressed because it was removed from a sealed container, the pillow, which could have been stored as a unit. After reviewing cases with similar issues, this Court finds that an inventory search of a sealed object is not perforce unreasonable. In *Rabenberg,* discussed above, the Court found that the opening of the sealed package was not unreasonable. 766 F.2d at 357. In *Bertine,* the police found $250 cash in a sealed envelope. Although the focus of the motion to suppress in *Bertine* was on the evidence found in the unsealed, but closed, metal canisters, the Court did not distinguish between objects which are open, partly open, closed, sealed or permanently sealed. Nor did the Court state that a closed or sealed object must be stored as a unit. As stated by the Court in *Lafayette,* "[e]ven if less intrusive means existed of protecting some particular types of property, it would be unreasonable to expect police officers in the everyday course of business to make fine and subtle distinctions in

deciding which containers or items may be searched and which may be sealed as a unit." 103 S.Ct. at 2610.

In the case at bar, Agent Weldon acted reasonably in opening the pillow. He felt hard lumps in the pillow when he removed it from the luggage. He also noticed that the seam had been loosely sewn with different colored thread. Based on prior experience, Agent Weldon believed that valuables might be hidden inside. Pursuant to standard procedure, he opened the pillow in order to inventory any valuables.

■ This Court also rejects defendant's argument that the inventory search is vitiated because the border patrol agents did not prepare an inventory form in accordance with standardized procedures. The *Detention Officer's Handbook* requires border patrol agents to complete the appropriate forms for money and valuables (G–589) and baggage and personal property (I–77; I–43 or I–213). Although it is normal procedure to compile an inventory, Agent Weldon did not prepare the forms because he did not find any valuables and he knew that the defendant was going to be transferred to the DEA, who would complete the inventory search.

In *Bertine*, cash and other items of value were not listed on the inventory form. 107 S.Ct. at 747. Even though the search was performed in a "somewhat slipshod" manner, the Supreme Court found that the search was reasonable. *Id.* at 740. Likewise, in *United States v. O'Bryant*, 775 F.2d 1528, 1534 (11th Cir.1985), the court refused to invalidate an otherwise reasonable search for failure to compile a complete written inventory. *See also Trullo*, 790 F.2d at 206 ("We will not hold that the officer's failure, technically, to follow the inventory form procedures for valuables meant it was not an inventory search.")

In the case at bar, the uncontradicted testimony was that standard inventory procedures required the agents to search for money and other valuables. Agent Weldon acted pursuant to these established inventory procedures. Although Agent Weldon testified that he found no "valuables," the Court believes that the better practice would have been to prepare an inventory of the contents of the luggage. Notwithstanding the fact that the inventory was conducted in a "somewhat slipshod" manner, Agent Weldon acted reasonably in conducting the search.

In conclusion, the Court finds that the search in the case at bar does not exceed the scope of a legitimate inventory search.

Accordingly, IT IS ORDERED that the defendant's motion to suppress evidence is DENIED.