985 F.2d 575
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Donald E. CUNNINGHAM, Defendant-Appellee.
 No. 91-50044.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 6, 1993.*
Decided Feb. 4, 1993.
 
 Appeal from the United States District Court for the Central District of California, No. CR-90-470-RG; Richard A. Gadbois, District Judge, Presiding.
 C.D.Cal.
 AFFIRMED.
 Before JAMES R. BROWNING, POOLE and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellant Donald E. Cunningham appeals his conviction on the charge of armed bank robbery in violation of 18 U.S.C. § 2113(a)(d). Cunningham contends that the district court failed to comply with Federal Rule of Criminal Procedure 12(e) in ruling on his motion to suppress and erred in denying the same. We affirm.
 
 
 3
 * On April 23, 1990, at approximately 1:10 p.m., a robbery occurred at the Bank of America located at 20118 Roscoe Boulevard in Winnetka, California. The robber, a white male wearing a brown tweed jacket, dark-colored pants, black cowboy boots and carrying a black leather "fanny pack," approached teller Deborah Yarger's window with a note printed in black ink on a pink sheet of paper. The note instructed Yarger to keep her feet off of the floor and to give the robber "all the large." Yarger looked at the robber, and he pushed back his jacket to reveal what appeared to be a gun in a shoulder holster. Yarger then placed approximately $408.00 in the fanny pack, which the robber grabbed before he left the bank. Yarger activated the alarm and surveillance camera while the robber was leaving, and the camera took several photographs of the robber as he left the bank.
 
 
 4
 On the morning of April 26, 1990, Los Angeles Police Department Detectives John Petievich and Danny McVay, who were accompanied by Los Angeles Police Officers Timothy Kidd and Kulin Patel, were trying to arrest Cunningham based on two outstanding warrants: an arrest warrant for violation of probation issued from Broward County, Florida and a warrant issued from Marin County, California. Petievich had arrested Cunningham before and knew that he had a previous felony conviction and was a heroin user. The police first sought to arrest Cunningham at the address listed in the Florida warrant, 20234 Blythe Street, Canoga Park, California, and learned that he no longer lived there. The police then attempted to locate Cunningham at the residence of his wife, Barbara Cunningham, located at 19023 Cantlay Avenue, Reseda, California. Mrs. Cunningham directed the police to the residence of Cunningham's girlfriend, Maurine Logan, located at 19505 Sherman Way, Reseda, California.
 
 
 5
 At approximately 9:30 a.m., the police arrived at the Sherman Way address and knocked on the door. Cunningham opened the door but immediately attempted to shut it. The officers prevented him from doing so and arrested him inside the residence. Cunningham asked to put some clothes on, and Kidd and Patel watched Cunningham while he got dressed downstairs. McVay and Petievich went upstairs to see if anyone else was in the house.
 
 
 6
 McVay and Petievich found Logan in bed and ordered her to get up. Logan informed the detectives that Cunningham lived with her in the apartment. The detectives observed that Logan showed signs of being under the influence of intravenous drugs. Logan admitted to them that she was a heroin user and told them that she was tired of heroin and wanted to overcome her addiction. She also said that she was glad the police arrested Cunningham because he was also a heroin user.
 
 
 7
 Sometime around 9:45 a.m., while the police officers took Cunningham to the police station, the detectives asked Logan if she was interested in arranging to purchase heroin so that they could arrest her suppliers. Logan agreed, and the detectives summoned two other officers, Officers Sharrar and Stutler. These officers arrived sometime between 10:30 a.m. and 11:30 a.m.
 
 
 8
 Sometime after Sharrar arrived and before noon, she discovered a pink note on top of the television set in the living room which read: "Keep feet under the counter, Fill bag--hundreds first, no alarm--no dye bomb, No one gets hurt." The police seized the note and summoned Detectives DeLosh and Getherall of the Robbery-Homicide division to the scene. The police then asked Logan if she would consent to the search of the residence and the car parked outside. Logan agreed and gave the police a written authorization.[1]
 
 
 9
 DeLosh and Getherall arrived at the residence and were shown the note and Logan's written authorization. While performing a search of the residence and car, DeLosh and Getherall found and seized a pink note pad, boots, dark-colored pants, a brown tweed jacket, and a black leather fanny pack.
 
 
 10
 On July 23, 1990, Cunningham filed a motion to suppress in the district court, arguing that the warrantless searches violated the Fourth Amendment because the search of the Sherman Way residence could not be justified as a consent search or based on the plain view doctrine.
 
 
 11
 The district court denied Cunningham's motion, finding that the police had a reasonable belief that they were dealing with a person who was capable and did in fact give consent and who had the right to consent to both looking at the apartment and into the car.
 
 II
 
 12
 Cunningham argues that the district court's findings were inadequate under Federal Rule of Criminal Procedure 12(e). Rule 12(e) states in relevant part: "Where factual issues are involved in determining a motion, the court shall state its essential findings on the record."
 
 
 13
 To the extent that Cunningham's argument goes to the issue of Logan's consent to the search of the residence and car, his argument is without merit. The district court, in finding that Logan was capable of consent and consented, necessarily determined that the circumstances of the case supported this finding. Voluntariness is a question of fact determined from all of the surrounding circumstances. United States v. Al-Azzawy, 784 F.2d 890, 895 (9th Cir.1985), cert. denied, 476 U.S. 1144 (1986). By stating on the record its ultimate determinations regarding Logan's consent, the district court complied with Rule 12(e). The district court need not find all of the underlying facts on which it based its decision. Rule 12(e) only requires the district court to make its essential findings on the record. See United States v. Gomez, 846 F.2d 557, 560 (9th Cir.1988) (holding that similar district court findings of consent were adequate).
 
 
 14
 Furthermore, this is not a case like United States v. Carbajal, 956 F.2d 924, 938 (9th Cir.1992), and United States v. Prieto-Villa, 910 F.2d 601, 607 (9th Cir.1990), in which the district court's failure to make specific findings would have forced us to resolve disputed factual questions. While the district court made no findings regarding the other issue raised in Cunningham's suppression motion, the validity of the plain view seizure of the note, the record before the district court was undisputed. An appellate determination regarding whether the plain view doctrine is applicable under the circumstances of this case is permissible. See United States v. Harrington, 636 F.2d 1182, 1185 (9th Cir.1980); United States v. Williams, 630 F.2d 1322, 1327 (9th Cir.), cert. denied, 449 U.S. 865 (1980); see also, United States v. Cervantes-Gaitan, 792 F.2d 770, 772 (9th Cir.1986) (holding that the district court could reasonably have found facts supporting denial of a motion to supress).
 
 III
 
 15
 Since remand is not necessary, we must determine whether the district court's ruling on the suppression motion was correct. The ultimate conclusion of the legality of the search is a mixed question of law and fact reviewed de novo. United States v. Thomas, 863 F.2d 622, 625 (9th Cir.1988). The underlying facts as found by the district court are reviewed for clear error. Id.
 
 
 16
 Cunningham argues that the evidence seized by the police should have been suppressed for a variety of reasons: (1) the police did not obtain a warrant before conducting a search; (2) the police illegally entered the house after arresting him and performed a warrantless search; (3) the seizure of the note was illegal; and (4) Logan's consent was not voluntary. However, the sequence of events and the constitutional justification for each action taken by the police shows that the district court properly denied the suppression motion.
 
 
 17
 The police had an arrest warrant for Cunningham when they went to the Sherman Way residence. Such a warrant "carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 603 (1980). When Cunningham opened the door and attempted to immediately shut it, the police had the right to enter and arrest him. "If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law." Id. at 602-03.
 
 
 18
 The police officers also had the right to perform a warrantless protective sweep, based on articulable facts and a reasonable suspicion arising therefrom, of areas harboring an individual posing a danger to those on the arrest scene. Maryland v. Buie, 110 S.Ct. 1093, 1098-99 (1990); United States v. Flippin, 924 F.2d 163, 165-66 (9th Cir.1991). The police knew Logan was staying in the house with Cunningham, a convicted felon. We "must be careful not to use hindsight in limiting the ability of police officers to protect themselves as they carry out missions which routinely incorporate danger." United States v. Castillo, 866 F.2d 1071, 1079 (9th Cir.1988) (citations omitted). Knowledge of Cunningham's criminal history and Logan's presence justified a protective sweep of the residence.
 
 
 19
 Logan gave the police permission to stay in the residence. The circumstances show that Logan's initial consent was voluntary. Therefore, the police were legally on the premises when they found the note in plain view, and the seizure of the note was valid. See Arizona v. Hicks, 480 U.S. 321, 323, 326 (1987) ( citing Coolidge v. New Hampshire, 403 U.S. 443 (1971)).
 
 
 20
 The district court found that Logan voluntarily consented to the police search of the house and car. The government has the burden of proving that consent to a warrantless search was voluntary. Delgadillo-Velasquez, 856 F.2d 1292, 1299 (9th Cir.1988). Whether consent to search was voluntary based on the totality of the circumstances is a question of fact reviewed for clear error. United States v. Gutierrez-Mederos, 965 F.2d 800, 803 (9th Cir.1992); Castillo, 866 F.2d at 1082. With respect to Logan's consent to the searches, she wrote an authorization stating that she consented of her own free will. The district court's finding was not clearly erroneous. The circumstances surrounding Logan's second consent show it was voluntary.
 
 
 21
 Thus, all of the evidence obtained by the police was admissible, and the district court properly denied Cunningham's suppression motion. The judgment of the district court is
 
 
 22
 AFFIRMED.
 
 
 
 *
 Pursuant to Ninth Circuit Rule 34-4, the panel unanimously finds this case suitable for disposition without oral argument
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The authorization states:
 "My name is Maurine C. Logan. I live at 19505 Sherman Way #11. I give permission to the L.A. Police and to the FBI to search my residence. This statement is made of my own free will.
 April 26, 1990
 12:00 p.m.
 Maurine C. Logan
 You can also search my vehicle for any findings.
 501-TKZ
 Orange Volvo
 
 
 [254]
 GL
 Maurine C. Logan