726 P.2d 632

**STATE of Arizona, Appellant,**

v.

**Charles STUKES, Appellee.**

**No. 1 CA–CR 9912.**

Court of Appeals of Arizona, Division 1, Department D.

Oct. 2, 1986.

Dale K. Patton, Jr., Co. Atty. by Joel H. Ruechel, Deputy Co. Atty., Holbrook, for appellant.

David A. Brown, Navajo County Public Defender, Holbrook, for appellee.

## OPINION

GRANT, Judge.

The defendant was arrested while hitchhiking on Interstate 40 after an officer, who had stopped to investigate defendant's presence on the highway, discovered that there were two outstanding warrants for the defendant's arrest from a South Phoenix justice court. At the time of his arrest, the defendant was carrying a duffel bag. He was transported to the Navajo County Jail and booked on the warrants. During the booking procedures, the arresting officer and jailers performed an inventory search of the defendant's duffel bag. They discovered marijuana inside the bag. The defendant was then charged with possession of marijuana, a class 6 felony.

Prior to trial, defense counsel filed a motion to suppress the physical evidence seized from the duffel bag. Following a hearing, the trial court suppressed the evidence and the state filed the instant appeal. The trial court granted a motion to stay the proceedings.

On appeal, the state argues that the court erred in granting appellee's motion to suppress the marijuana discovered in the duffel bag because the search was a lawful inventory search.

## MOTION TO SUPPRESS

The state argues that under *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), the trial court erred in granting appellee's motion to suppress because the police had the right to search the duffel bag in the defendant's possession as part of a routine booking or inventory search.

During the suppression hearing, an officer testified that the search of the defendant's duffel bag was conducted in accordance with routine, pre-incarceration procedures at the Navajo County Jail. The officer stated that it was part of his normal duties to be present during an inventory search. He also testified that his main concern in performing such a search was to discover weapons or dangerous instruments and to protect a defendant's property. In granting the defendant's motion to suppress, the court's minute entry stated, "[t]he court makes a distinction between a duffel bag and other articles such as hand or shoulder bags and therefore, grants the Motion to Suppress."

The scope of a permissible inventory search was defined by the court in *Illinois v. Lafayette*. The court stated that it is not:

"unreasonable" for police, as part of the routine procedure incident to incarcerating an arrested person, to search *any container or article in his possession*, in accordance with established inventory procedures.

*Id.* at 648, 103 S.Ct. at 2611 (emphasis added and footnote omitted). In *Lafayette*, during a routine inventory search, the police searched the contents of a shoulder bag and discovered drugs. The court noted that:

Even if less intrusive means existed of protecting some particular types of property, it would be unreasonable to expect police officers in the everyday course of business to make fine and subtle distinctions in deciding which containers or

items may be searched and which must be sealed as a unit.

*Id.* at 648, 103 S.Ct. at 2610.

In *United States v. Cervantes-Gaitan,* 792 F.2d 770 (9th Cir., 1986), the search of a duffel bag, carried by a person arrested by border patrol agents after he admitted having illegally entered the United States, was held to be a proper inventory search. Agents testified that the search of the duffel bag at the station was a "standard inventory procedure." *Cervantes-Gaitan,* 792 F.2d 770, 773. An agent also testified he did not make an inventory list of all the articles found in the bag because standard procedure normally calls for only an inventory list of money.

Although the court in *Cervantes-Gaitan* held the heroin was lawfully discovered during a search incident to arrest, it also held the district court could properly have decided that the heroin was discovered during a more thorough search at the border patrol station. The court held the defendant's motion to suppress was properly denied because there was sufficient evidence to sustain the conclusion that the search of the duffel bag was a valid inventory search. *See also United States v. Andrade,* 784 F.2d 1431 (9th Cir.1986) (court affirmed admissibility of cocaine found in garment bag which would have been found during a routine booking procedure); *State v. Toto,* 123 N.H. 619, 465 A.2d 894 (1983) (defendant, arrested in bus station with a large green garbage bag in front of him, was later incarcerated and the green garbage bag subjected to an inventory search. Drugs found during search were properly admitted.)

The rule in *Lafayette* was presaged by the United States Supreme Court's discussion of "worthy" versus "unworthy" containers in *United States v. Ross,* 456 U.S. 798, 821–22, 102 S.Ct. 2157, 2171, 72 L.Ed.2d 572 (1982). The court, in discussing the legitimate scope of a search of a motor vehicle when the police have probable cause to believe it contains contraband, stated:

When a legitimate search is underway, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

This rule applies equally to all containers, as indeed we believe it must. One point on which the Court was in virtually unanimous agreement in *Robbins* was that a constitutional distinction between "worthy" and "unworthy" containers would be improper. [footnote omitted] Even though such a distinction perhaps could evolve in a series of cases in which paper bags, locked trunks, lunch buckets, and orange crates were placed on one side of the line or the other, the central purpose of the Fourth Amendment forecloses such a distinction. [footnotes omitted]

In *Lafayette,* the court made it clear that it was the nature of the search that justified the intrusion into any container or article in the possession of the person arrested and incarcerated. An inventory search serves a legitimate governmental interest that outweighs the individual's privacy interest in the container in his possession which is inventoried. The measures adopted by police in a reasonable search protect the owner's property while in the custody of the police and protect the police against possible false claims of theft. Storage of controlled substances may pose internal security problems for law enforcement agencies giving rise to yet another reason justifying the inventory search.

The search of the duffel bag in this case was a reasonable inventory search and the trial court erred in granting the defendant's motion to suppress. This matter is remanded for further proceedings consistent with this opinion.