SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| STATE OF ARIZONA, | ) Arizona Supreme Court |
| | ) No. CR-12-0462-PR |
| Appellant, | ) |
| | ) Court of Appeals |
| v. | ) Division One |
| | ) Nos. 1 CA-CR 11-0592 |
| KEVIN OTTAR and RUAN JUNIOR | ) 1 CA-CR 11-0600 |
| HAMILTON, | ) (Consolidated) |
| | ) |
| Appellees. | ) Maricopa County |
| | ) Superior Court |
| | ) Nos. CR2010-155798-001 |
| | ) CR2010-155798-002 |
| | ) |
| | ) **O P I N I O N** |
| | ) |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Paul J. McMurdie, Judge

**REVERSED**

_____

Memorandum Decision of the Court of Appeals, Division One
Filed Oct. 9, 2012

**AFFIRMED**

_____

WILLIAM G. MONTGOMERY, MARICOPA COUNTY ATTORNEY            Phoenix
      By   E. Catherine Leisch, Deputy County Attorney
Attorneys for the State of Arizona

MEHRENS AND WILEMON PA                                     Phoenix
      By   Craig Mehrens
           Amy Wilemon
Attorneys for Kevin Ottar

KIMERER & DERRICK PC                                       Phoenix
      By   Clark L. Derrick
           Michael Alarid, III
Attorneys for Ruan Junior Hamilton

_____

**P E L A N D E R**, Justice

¶1       In a "reverse-sting" operation, undercover law enforcement officers sell drugs or other contraband to unsuspecting purchasers.  The issue here is whether purchasers who handle and pay for drugs in a reverse sting, but do not and would not have been allowed to take them away, can be said to "possess" drugs for sale.  Contrary to the purchasers' argument, we conclude that it is possible to commit the offense of possessing drugs for sale under these circumstances.

## I.

¶2       An undercover detective arranged to sell a large quantity of marijuana to defendants Ruan Hamilton and Kevin Ottar.[1]  The marijuana was in bales in a warehouse that undercover law enforcement officers covertly monitored and controlled.  The defendants and the detective went to the warehouse, where the defendants touched, smelled, and inspected the marijuana bales, placing those they liked into separate piles.  The defendants agreed to buy 375 pounds, left the warehouse, and met with undercover detectives at a house, where the defendants paid $180,000 in cash for the intended purchase. After returning to the warehouse, the defendants repackaged the

---

[1]     We describe the facts as set forth in the defendants' joint motion to dismiss, which indicated the facts were taken from law enforcement reports and the grand jury presentation and were "undisputed" for purposes of the motion.

2

marijuana using a product to mask the odor. They were arrested at a hotel before taking any marijuana from the warehouse.

¶3        The defendants were charged, among other counts, with possession of marijuana for sale, in violation of A.R.S. § 13-3405(A)(2). They jointly moved to dismiss that count under Arizona Rule of Criminal Procedure 16.6(b), arguing broadly that "it is impossible to commit possession of marijuana for sale in a reverse sting operation," and more specifically that they did not possess the marijuana here because both the drugs and the warehouse were controlled by police at all times. The trial court granted the motion in part, ruling that "the police officers were never going to allow [the defendants] to possess [the marijuana]," but permitted the State to proceed instead on a charge of attempted possession. *See* A.R.S. § 13-1001(A). After the court dismissed the case without prejudice at the State's request, the court of appeals reversed, concluding that, given the legal definition of "possess," it was not impossible for the defendants to have possessed the marijuana and committed the charged offense even though the police never intended to allow them to leave with the drugs. *State v. Ottar*, Nos. 1 CA-CR 11-0592, 1 CA-CR 11-0600, 2012 WL 4789834, at *2 ¶ 8 (Ariz. App. Oct. 9, 2012) (mem. decision).

¶4        We granted review because the question of possession in a reverse-sting operation is of statewide importance and

likely to recur.  We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

¶5     Under § 13-3405(A)(2), it is unlawful to knowingly possess marijuana for sale.  Although that statute does not define "possess," A.R.S. § 13-105(34) does:  "'Possess' means knowingly to have physical possession or otherwise to exercise dominion or control over property."  The statutory definition thus recognizes two kinds of possession:  actual possession ("to have physical possession") and constructive possession ("or otherwise to exercise dominion or control over property").

¶6     The State claims that the defendants actually possessed the marijuana; it does not advance a constructive possession theory.  *Cf. State v. Villavicencio*, 108 Ariz. 518, 520, 502 P.2d 1337, 1339 (1972) (generally, "constructive possession" applies to circumstances where the drug is not found on the defendant's person or in his presence, but rather in a place "under his dominion and control" and when "it can be reasonably inferred that the defendant had actual knowledge of the existence of the narcotics").  The defendants argue that they never actually possessed the marijuana and that it was impossible for them to do so.

¶7     As an initial matter, we reject the State's contentions that "physical possession" is distinct from having

4

"dominion or control" over property, and that possession occurred when the defendants merely touched and handled the marijuana. We instead conclude, as indicated by the definitional statute's use of the phrase "*otherwise* to exercise dominion or control over property," that "physical possession" requires some exercise of dominion or control over property. A.R.S. § 13-105(34) (emphasis added); *see also id.* § 13-105(35) (stating that "'[p]ossession' means a voluntary act if the defendant knowingly exercised dominion or control over property"); *United States v. Adams*, 625 F.3d 371, 383 (7th Cir. 2010) ("One actually possesses a thing when it is in his physical custody and control."); *cf. State v. Barreras*, 112 Ariz. 421, 423, 542 P.2d 1120, 1122 (1975) (reversing conviction for possession of heroin when no evidence supported finding that the defendant "had dominion and control, either actual or constructive," over the drugs).

¶8        "Dominion" is not alleged or at issue here. The critical question, then, is whether the defendants "exercise[d] . . . control" over the marijuana within the meaning of § 13-105(34). Because Arizona's criminal statutes do not define "control," we give that word its ordinary meaning. A.R.S. § 1-213; *see State v. Cox*, 217 Ariz. 353, 356 ¶ 20, 174 P.3d 265, 268 (2007) (noting that "control is not a technical term" and "has a commonly understood meaning").

¶9        Generally, control means to "have power over." *State v. Tyler*, 149 Ariz. 312, 316, 718 P.2d 214, 218 (App. 1986) (quoting Webster's Third New International Dictionary (Unabridged) 496 (1981)); *see also* Black's Law Dictionary 378 (9th ed. 2009) (defining "control" as "[t]o exercise power or influence over"). Thus, control implies more than mere touching or inspection of contraband. In the reverse-sting context, control requires that the defendant "has taken custody of the drugs or manifested an intent to do so." *Adams*, 625 F.3d at 383. This meaning comports with "Arizona's broad definition of 'possess.'" *State v. Cheramie*, 218 Ariz. 447, 449 ¶ 11, 189 P.3d 374, 376 (2008). But it also differentiates the crime of possession from that of attempted possession. *See United States v. Kitchen*, 57 F.3d 516, 525 (7th Cir. 1995) ("[R]eading the element of control out of the equation . . . risk[s] confusing possession with attempted possession.").

¶10       *Kitchen* and *Adams*, both reverse-sting cases decided by the Court of Appeals for the Seventh Circuit, aptly illustrate these principles. In *Kitchen*, the court reversed the defendant's conviction for possessing cocaine with intent to distribute because the evidence showed only that he had momentarily handled and inspected the cocaine after expressing an interest in buying some. *Id.* at 519, 524-25. No evidence showed that, before his arrest, the defendant had assented to a

6

deal, otherwise agreed to complete the transaction, tendered any purchase money, or intended to take or transport the drugs. *Id.* at 522-23. Absent any such facts, possession was not established because the defendant "neither controlled [the drugs] nor had recognized authority over them." *Id.* at 525. "Lack of control," the court concluded, was "dispositive under both the doctrines of actual and constructive possession." *Id.*

¶11 Conversely, in *Adams*, the court upheld the defendant's conviction for possessing marijuana with intent to distribute, finding the evidence sufficient to establish actual and constructive possession. 625 F.3d at 385-86. There, the defendant paid for the marijuana, took the keys to a van containing the drugs, and attempted to start the van, not knowing that federal agents had disabled it. *Id.* at 376. Distinguishing *Kitchen*, the court noted that "Adams unequivocally manifested his assent to possession of the marijuana," "constructively possess[ing]" it "once he accepted the keys to the van," and "actually possess[ing] it once he entered the van and attempted to start it." *Id.* at 385-86. Even though a defendant in a reverse-sting operation "ha[s] no practical ability to leave the scene with the [drugs]" because of "the presence of law enforcement officers standing ready to arrest him," the *Adams* court reasoned that "the defendant, by knowingly taking the drugs into his custody, has done all that

7

he can do, short of leaving the scene with them, to signal his desire and intention to accept control over the drugs." *Id.* at 383-84 (collecting cases from other federal circuit courts finding possession in reverse-sting operations with similar facts); *cf. State v. Gasperino*, 859 S.W.2d 719, 722 (Mo. Ct. App. 1993) (constructive possession charge not defeated by fact that defendant "never would have had actual possession due to police policy," or that officers intervened with arrest before defendant "could actually pick up the marijuana" he thought he had purchased).

¶12 Like the court in *Kitchen*, we conclude that a defendant in a reverse-sting operation does not possess drugs merely by touching or inspecting them before a purchase is consummated. *See* 57 F.3d at 525 ("The intent to engage in a drug transaction, without more, cannot support a conviction for possession."). But like the court in both *Kitchen* and *Adams*, we also conclude that possession is not rendered legally impossible merely because a defendant does not leave the scene with the drugs and has little practical ability to do so. *See id.* at 522, 524 (noting that many courts have "reject[ed] the argument that a defendant cannot have possessed the controlled substance in light of the presence of federal agents," and that Kitchen's lack of control was "not because the presence of federal agents would have ultimately prevented his success"); *Adams*, 625 F.3d

8

at 385 (the defendant's ability or opportunity "to drive away [with the drugs] was not necessary to establish his possession of the marijuana"). "Of necessity, the particulars of a given drug transaction will drive the determination that a certain aspect of the defendant's conduct is unequivocal enough to establish possession." *Kitchen*, 57 F.3d at 523.

¶13     Applying those principles, we conclude that in a reverse-sting operation, a defendant may be found to have possessed drugs within the meaning of Arizona's statutes if the defendant exerts some control over or manifests an intent to control the drugs. *See Adams*, 625 F.3d at 383; *Kitchen*, 57 F.3d at 524-25. On the facts alleged here, Ottar and Hamilton did so, "signal[ing] [their] desire and intention to accept control over the drugs" by not merely touching and smelling the marijuana, but by segregating and arranging in separate piles the portions they wanted to buy, repackaging those bundles (using a product to mask the odor), and paying for their intended purchase. *Adams*, 625 F.3d at 384. Those actions sufficiently demonstrate the defendants' intent to exercise control over and possess the marijuana, notwithstanding the police presence at the scene. The Arizona statutes do not suggest that, to have physical possession, one's exercise of control must be exclusive of others' or absolute.

¶14     The defendants, however, argue (and the trial court

9

essentially ruled) that their conduct falls squarely within A.R.S. § 13-1001, which defines the preparatory offense of attempt, and the State is therefore precluded from charging them with the completed offense under § 13-3405(A)(2). We disagree.

¶15 "An attempt is substantively different from a completed crime" and "requires only that the defendant intend to engage in illegal conduct and that he take a step to further that conduct." *Mejak v. Granville*, 212 Ariz. 555, 559 ¶ 20, 136 P.3d 874, 878 (2006) (citing A.R.S. § 13-1001). "The ultimate crime need not be completed, or even possible, for a defendant to be criminally responsible for an attempt to commit a crime." *Id.* Conversely, "a defendant cannot be held criminally responsible for a completed crime when it is impossible to commit the offense," *id.* ¶ 21, that is, "when the facts required for the commission of the completed offense are not present, even though the defendant may believe so," *id.* at 558 ¶ 15, 136 P.3d at 877.

¶16 Relying on *Mejak*, the defendants contend it was impossible for them to commit the completed offense of possession of marijuana for sale. But in that case, the defendant "could not violate the criminal statute [A.R.S. § 13-3554] under which he was indicted" because the person he lured for sexual exploitation was in fact neither a minor nor a peace officer posing as a minor, a statutory prerequisite for the

10

completed crime.  *Id*. at 559 ¶ 21, 136 P.3d at 878.  Here, in contrast, the practical improbability of the defendants taking marijuana from the warehouse does not render their possession of the drugs, and thus their commission of the completed offense, legally impossible.  Nor is this case like *State v. McElroy*, in which "the defendant could never have been convicted of possession of dangerous drugs" when the material he possessed was not illegal, even though he thought it was.  128 Ariz. 315, 317, 625 P.2d 904, 906 (1981).

¶17    The State certainly could have charged Ottar and Hamilton with attempted possession of marijuana for sale, and it then would have had an easier case to prove.  But nothing required the State to charge only attempt rather than the completed crime, despite the defendants' claim of impossibility.  *See People v. Rizo*, 996 P.2d 27, 30 (Cal. 2000) ("When determining whether the commission of a crime is factually impossible, we do not concern ourselves with the niceties of distinction between physical and legal impossibility," but rather "focus on the elements of the crime and the intent of the defendant." (internal quotation marks omitted)).

¶18    Defendants also rely heavily on *State v. Miramon*, which, unlike this case, concerned whether the evidence at trial was sufficient to establish constructive possession.  27 Ariz. App. 451, 452, 555 P.2d 1139, 1140 (1976).  The court of appeals

in *Miramon* found insufficient evidence to support the defendant's conviction of possession of marijuana for sale in part because "the state did not prove that [the defendant] had the right to control [the marijuana's] disposition or use." *Id.* at 453, 555 P.2d at 1141. But no such prerequisite to possession is found in the statutes or cases. *See* A.R.S. §§ 13-105(34), -3405(A)(2); *State v. Salinas*, 181 Ariz. 104, 106, 887 P.2d 985, 987 (1994) (recognizing the elements of possession of narcotics for sale). It is not necessary for a defendant charged with actually possessing drugs to be found to have had a "right," legal or otherwise, to control their disposition or use. We therefore reject the defendants' effort to extend *Miramon* to this case.

¶19    Defendants also urge us to follow *Skrivanek v. State*, a reverse-sting case in which the trial court found dominion or control lacking and therefore dismissed possession charges against the defendant, who was convicted instead of attempted possession. 739 A.2d 12, 16-18 (Md. 1999). That case is inapposite, however, because the trial court's ruling on the possession charges was not at issue on appeal. *Id.* at 14. In addition, that ruling was colored by the trial court's reliance on an undercover officer's testimony that the defendant "was in custody" at all pertinent times. *Id.* at 17. Here, in contrast, the defendants were not in custody until they were arrested,

12

several hours after they had extensively handled, inspected, paid for, and repackaged the marijuana they wanted to buy.

### III.

¶20     We hold that it was not legally impossible for the defendants to possess the marijuana, despite the practical difficulty of leaving the scene with it, given the police presence in the reverse-sting operation.  Because the facts alleged are not insufficient as a matter of law, the trial court erred in dismissing the possession-for-sale charge under Rule 16.6(b).[2]  We thus reverse that ruling and affirm the court of appeals' decision.  Like the court of appeals, however, we express no opinion whether the evidence to be presented at trial will suffice to sustain convictions on the possession charge. *See* Ariz. R. Crim. P. 20.  At that stage, unlike now, the question will be whether there is "evidence sufficient to

---

[2]     At oral argument, the parties disagreed on some of the underlying facts.  The defendants, for example, argued that they went to the warehouse only once, contrary to the "undisputed" facts set forth in their motion to dismiss.  Such factual disputes, however, are immaterial at this stage of the proceedings.  Motions to dismiss under Rule 16.6(b) are not a means for testing, before trial, whether the state has enough evidence to prove the elements of an offense.  *Compare* Ariz. R. Crim. P. 16.6(b) (standard for dismissal is whether charge "is insufficient as a matter of law"), *with* Ariz. R. Crim. P. 20 (standard for judgment of acquittal on charge is whether "there is no substantial evidence to warrant a conviction").  "If a defendant can admit to all the allegations charged in the indictment and still not have committed a crime, then the indictment is insufficient as a matter of law" and subject to dismissal under Rule 16.6.  *Mejak*, 212 Ariz. at 556 ¶ 4, 136 P.3d at 875.  That is not so here.

establish [the] defendant's actual or constructive possession of [marijuana] once the defendant or his accomplice has taken custody of the drugs or manifested an intent to do so." *Adams*, 625 F.3d at 383.

_____
John Pelander, Justice

CONCURRING:

_____
Rebecca White Berch, Chief Justice

_____
Scott Bales, Vice Chief Justice

_____
Robert M. Brutinel, Justice

_____
Ann A. Scott Timmer, Justice

14