IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellant,*

*v.*

BRANDON DUANE HOLLINS, *Appellee.*

No. 1 CA-CR 15-0222
FILED 5-17-2016

Appeal from the Superior Court in Maricopa County
No. CR2014-121522-001
The Honorable Pamela H. Svoboda, Judge

**AFFIRMED IN PART, REVERSED IN PART**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Amanda M. Parker
*Counsel for Appellant*

Maricopa County Public Defender's Office, Phoenix
By Paul J. Prato
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding
Judge Peter B. Swann and Judge Lawrence F. Winthrop joined.

**K E S S L E R**, Judge:

¶1        The State of Arizona ("State") appeals from the superior court's order granting defendant Brandon Duane Hollins's ("Hollins") motion to suppress his statements and physical evidence allegedly obtained as a result of a police interrogation in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).  For the reasons that follow, we affirm the order suppressing Hollins's statements to police about his ownership of a backpack, but reverse the order suppressing the contents of the backpack.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Two Phoenix police officers arrived at an extended-stay hotel. When the officers got to the property, they saw Hollins around the hotel office.  The officers then saw Hollins and a woman hurriedly walk up exterior hotel stairs and enter a hotel room.  An officer noticed Hollins was carrying a black backpack with white trim.  The officers learned from hotel management that a large number of unregistered guests occupied the room where Hollins entered, and the police subsequently helped hotel security serve a notice of trespass on that room.

¶3        When the officers arrived at the room, there were four people present, but none of them were registered guests.   They asked Hollins for identification.  When they discovered he had an outstanding warrant for his arrest, they arrested him and two other unregistered occupants who also had outstanding warrants. They handcuffed Hollins with his arms behind his back.  The officers saw two backpacks in the room and, without giving any *Miranda* warnings, questioned the occupants to determine what property belonged to whom to decide what property would stay in the room and what would be removed.[1]  The black backpack with white trim was directly in front of Hollins and about a foot away from him. The officer asked Hollins, two or three times, who the black backpack with white trim belonged to, and each time Hollins denied ownership of the backpack. Hollins eventually admitted the backpack belonged to him after the officer said he had seen Hollins walk up the stairs with the bag. The outside pocket of the backpack was open and upon shining a flashlight into the opening, the police saw what they thought was a pipe with methamphetamine

---

[1] An officer testified that the hotel management asked law enforcement to remove all property from the room not belonging to the registered hotel occupant.

residue. Given that fact, the police did not agree to Hollins's request that they give the backpack to one of the occupants who was not being arrested.

¶4 The police took the backpack into the patrol car and searched it, finding index cards with victims' financial information, a checkbook and IDs (none of which were in Hollins's name nor in the name of anyone else in the room), and the pipe they thought was drug paraphernalia. The State charged Hollins with one count of Aggravated Taking Identity of Another, a class three felony (three or more persons or entities). Ariz. Rev. Stat. ("A.R.S.") §§ 13-2009 (2014), -2001 (2015), -702 (2009), -801 (2015).[2]

¶5 Hollins moved to suppress (1) the statements he made to law enforcement pursuant to the Fifth Amendment of the United States Constitution and Article 2, Section 4, of the Arizona Constitution; and (2) the physical evidence found in his backpack pursuant to the Fourth Amendment of the United States Constitution, and Article 2, Section 8, of the Arizona Constitution. Hollins contended his statements to law enforcement were taken while in custody without a *Miranda* warning. Hollins further argued that because law enforcement discovered the items in his backpack solely as a result of un-*Mirandized* statements, the physical evidence was illegally seized and had to be suppressed. The State argued that because there was no interrogation there was no *Miranda* violation and that in any event, the search of the backpack was valid as a search incident to arrest or an inventory search.

¶6 The superior court granted Hollins's motion as to both the statements and the documents in the backpack. The court held that although the officer's singular question to Hollins about the ownership of the backpack on its own was not an interrogation, the repeated questioning was the "functional equivalent of interrogation" under *Rhode Island v. Innis*, 466 U.S. 291, 301 (1980). Because Hollins was also in custody, the court held the interrogation was in violation of *Miranda*. The court further held that because the police discovered the backpack was Hollins's because of the statements obtained in violation of *Miranda* and searched it as part of an inventory search, the evidence from the backpack must also be suppressed. The court also held the search would not be valid under the inevitable

---

[2] We cite to the current version of the relevant statutes unless revisions material to this decision have occurred.

discovery doctrine because the search was only tied to Hollins based on the statements in violation of *Miranda*.[3]

**¶7** The State unsuccessfully moved for reconsideration, arguing in part that the search was valid because the meth pipe was in plain view and that possession of the backpack was sufficient to justify an inventory search. The court then granted the State's motion to dismiss the case without prejudice pursuant to Rule 16.6 of the Arizona Rules of Criminal Procedure. The State timely appealed the suppression order. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 12-120.21(A)(1) (2016), 13-4031, -4033(A)(1) (2015).

## STANDARD OF REVIEW

**¶8** In reviewing orders on motions to suppress evidence, we consider only evidence presented during the suppression hearing, *State v. Brown*, 233 Ariz. 153, 156, ¶ 4 (App. 2013), and view the facts in the light most favorable to the trial court's ruling, *State v. Gerlaugh*, 134 Ariz. 164, 167 (1982). We defer to the trial court's factual findings unless they are clearly erroneous. *State v. Rosengren*, 199 Ariz. 112, 116, ¶ 9 (App. 2000). We review the court's legal conclusions *de novo*. *State v. Moody*, 208 Ariz. 424, 445, ¶62 (2004).

## DISCUSSION

**¶9** The State argues the superior court erred because: (1) Hollins's post-arrest statements of ownership did not violate *Miranda;* and (2) the search of the backpack complied with the Fourth Amendment because there was no connection between Hollins's post-arrest statements and the search.

### I. The court did not err in suppressing Hollins's post-arrest statements.

**¶10** Statements stemming from a custodial interrogation cannot be used against a defendant absent procedural safeguards securing the privilege of self-incrimination. *Miranda*, 384 U.S. at 444. Interrogation under *Miranda* refers to both express questioning and the "functional equivalent" of questioning. *Innis*, 466 U.S. at 301. The focus of inquiry as

---

[3] The superior court characterized the search of the backpack as "part of an inventory search," but did not state whether the inventory search was valid.

to whether a suspect was subject to interrogation is on the perceptions of the suspect, and not the intent of the police. *Id.*

¶11 The State contends there was no *Miranda* violation because, even though Hollins was in custody when he made the statement about ownership of the backpack, the statement was not a result of a custodial interrogation. As we understand the State's position, despite the police repeatedly asking Hollins if he owned the backpack, this was not an interrogation because the police already knew Hollins owned the backpack, needed to confirm that to clear the room, and the police cannot be expected to know that Hollins would make incriminating statements in response to a request of ownership of the backpack.

¶12 We disagree with the State. First, it is undisputed that Hollins was in custody when he was questioned and that the police did not give Hollins his *Miranda* warnings. Generally, police may ask a question of a person in custody as to ownership of property to ensure that the property is safeguarded. *Miranda*, 384 U.S. at 477 (excluding general on-the-scene questioning from the definition of custodial interrogation); *Innis*, 466 U.S. at 301 (stating that words or conduct by the police "normally attendant to arrest and custody" do not fall within the purview of interrogation). However, repeatedly asking a person whether he owned property over his denials amounts to an interrogation under the "functional equivalent" definition of questioning under *Innis*. *Innis*, 466 U.S. at 301. While the State contends that the police already knew the backpack belonged to Hollins, we need not decide whether questioning to confirm that knowledge is subject to *Miranda* because the State's position is contradicted by the fact that the police repeatedly asked Hollins if it was his until he admitted ownership. If the police knew Hollins owned the backpack, there was no need for them to repeatedly question him. Thus, viewing the evidence in the light most favorable to affirm the superior court, the superior court did not believe that the police already knew the ownership of the backpack. We defer to the trial court for witness credibility determinations. *State v. Estrada*, 209 Ariz. 287, 288, ¶ 2 (App. 2004).

¶13 We also reject the State's contention that we should not apply *Miranda* if the police questioning did not intend to obtain incriminating information. *Innis* explicitly rejected an interrogation analysis based on officer intent. *Innis*, 466 U.S. at 301 (opining that *Miranda* safeguards were designed to protect a suspect in custody against coercive police practices without regard to the underlying intent of police). *Miranda* was intended to establish black letter law: if the defendant is in custody, any statements he makes in response to interrogation are inadmissible, unless he agrees to

answer questions after being read his *Miranda* rights. *Miranda*, 384 U.S. at 492. That clear rule would be impractical to enforce if *Miranda* did not apply simply because the police said they were not intending to obtain incriminating evidence from the person in custody being interrogated. Under this line of reasoning, officers could adopt a habit of posing seemingly innocuous questions under the pretense of innocent intentions that produce incriminating responses, and defendants would lose their constitutional protection under *Miranda*. Such an outcome is antithetical to the prophylactic measures embodied in *Miranda* warnings that protect the constitutional right against self-incrimination.[4]

## II.     The trial court erred in suppressing the physical evidence in the backpack.

¶14     The State contends that the backpack search was constitutional because it was either a search incident to arrest or a valid inventory search. As we understand the State's argument, it contends that the *Miranda* violation did not result in the backpack search because the contents of the closed backpack would have been discovered regardless of the statement as to ownership. We need not reach the issue of whether this was a valid search incident to arrest because we agree with the State that the documents found in the backpack would have been inevitably discovered as part of an inventory search.

¶15     Warrantless searches and seizures are *per se* unreasonable under the Fourth Amendment, subject to a few well-delineated exceptions. *State v. Davolt*, 207 Ariz. 191, 203, ¶ 29 (2004) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). An inventory search does not constitute an illegal search and seizure if the search is to safeguard the property of the person in custody, subject to police policy, and not to obtain evidence. *Illinois v. Lafayette*, 462 U.S. 460, 463–64 (1983) (holding that an inventory search is an incidental administrative step between arrest and incarceration, and the justification for an inventory search is not predicated on probable cause). The constitutional validity of a warrantless search is dependent on the factual context of each case. *Sibron v. State*, 392 U.S. 40, 59 (1968). The results of an invalid warrantless search are not subject to the exclusionary rule if the evidence lawfully would have been found in any event. *Davolt*,

---

[4] Of course, spontaneous, voluntary admissions made to police without *Miranda* warnings are not excludable. *See State v. Carter*, 145 Ariz. 101, 106 (1985). The State could not successfully argue that Hollins spontaneously admitted ownership after repeated questions if he owned the backpack.

207 Ariz. at 204, ¶ 35 (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984); *State v. Lamb*, 116 Ariz. 134, 138 (1977)).

**¶16** Valid inventory searches fall within the inevitable discovery doctrine because they are routine administrative searches where police discretion is limited by standardized criteria on the basis of something other than suspicion of evidence of criminal activity. *See Colorado v. Bertine*, 479 U.S. 367, 375-76 (1987). The reasonableness of an inventory search is predicated on two conditions: (1) the arrestee had possession of the searched item, and (2) the search was in line with standardized administrative police procedures. *State v. Stukes*, 151 Ariz. 216, 217-18 (App. 1986) (citing *Lafayette*, 462 U.S. at 643-44, 646-47).

**¶17** The record is undisputed that Hollins was in possession of the backpack both before and when he was arrested. Prior to the arrest, officers saw him carrying the backpack to the motel room. On his arrest, the backpack was one foot in front of him. *Supra*, ¶ 2; *see State v. Ottar*, 232 Ariz. 97, 99-100, ¶¶ 5-7, 9 (2013) (holding that possession under the criminal code means to exercise dominion or control over the property and control in its ordinary sense means to have power over something) (citations omitted). Clearly, Hollins had possession of the backpack when he climbed the stairs to the room. He also had sufficient control in the motel room. *See State v. Villavicencio*, 108 Ariz. 518, 520 (1972) (holding that defendant had constructive possession of narcotics found in a box on the open back porch of his apartment even though it was accessible to others). Indeed, the superior court found that Hollins was in possession of the backpack at least when he was climbing the stairs to the room.

**¶18** However, the court erred in holding that to have a valid inventory search, the State had to prove the defendant *owned* the backpack. Specifically, the court stated that the backpack's contents had to be suppressed because the police learned the backpack was Hollins's based on Hollins's statement that he owned it. The rule, however, is that an inventory search may be valid if the defendant possessed the backpack. *Stukes*, 151 Ariz. at 217-18 (citing *Lafayette*, 462 U.S. at 643-44, 646-47).[5]

**¶19** The second prerequisite for a valid inventory search is that it was undertaken pursuant to standardized administrative police

---

[5] This confusion may have been a result of the arguments of counsel in the superior court which also focused on ownership rather than possession. The State only raised the issue of possession being sufficient for an inventory search in the motion for reconsideration.

procedures. *Id.* While the record only provides a conclusory statement about the police normally impounding property of an arrestee especially if contraband is found, we may take judicial notice of such formal inventory policies. *State v. Rojers*, 216 Ariz. 555, 560-61, ¶¶ 25-26 (App. 2007). Phoenix Police Department Operations Order 4.11.10 provides that "[u]pon the full custody arrest of a subject, officers shall inventory all personal effects in the person's possession prior to booking." It further provides that "[a]s part of the inventory, officers shall look inside all containers, locked or unlocked." (https://www.phoenix.gov/policesite/Documents/operations_orders.pdf (last visited April 29, 2016)).

**¶20**          Since the contents of the backpack were found subject to a valid inventory search, the court erred in suppressing those contents. Given our holding today, we need not decide whether we should follow *United States v. Patane*, 532 U.S. 630 (2004), in which a plurality of the Court held that evidence found as a result of statements made after a *Miranda* violation was not subject to the exclusionary rule if the statements themselves are not admitted.[6] *But cf. Davolt*, 207 Ariz. at 204 (holding that if evidence is discovered as a result of a *Miranda* violation and the evidence would not have been inevitably lawfully discovered, the physical evidence must be excluded).

## CONCLUSION

**¶21**          For the reasons stated above, we affirm the superior court's order suppressing Hollins's statement to the police that he owned the backpack, but reverse the order suppressing the evidence the police found in the backpack.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

[6] *See Marks v. United States*, 430 U.S. 188, 193 (1977) (holding that when a Court decision is the result of a plurality vote, we are to take the narrowest possible reading of the decision in light of the concurrences).